Opinion issued July 10, 2008




     










In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00756-CV




AMBULATORY INFUSION THERAPY SPECIALIST, INC., Appellant

V.

NORTH AMERICAN ADMINISTRATORS, INC., D/B/A NORTH
AMERICAN HEALTH PLANS AND OSMOSE, INC., Appellees




On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2005-65674




O P I N I O N

          Appellant, Ambulatory Infusion Therapy Specialist, Inc. (“AITS”), appeals the
trial court’s order granting summary judgment in favor of appellees, North American
Administrators, Inc. d/b/a North American Health Plans (“NAHP”) and Osmose, Inc. 
In six issues on appeal, AITS argues that (1) the trial court erred in sustaining
NAHP’s objections to AITS’s summary judgment evidence; (2) the trial court erred
in finding that not more than a scintilla of evidence supported AITS’s claim for
breach of contract; (3) the trial court erred in finding that not more than a scintilla of
evidence supported AITS’s claim for promissory estoppel; (4) the trial court erred in
finding that appellees established as a matter of law that AITS’s state law claim for
breach of contract was preempted by ERISA; (5) the trial court erred in finding that
appellees established as a matter of law that AITS’s state law claim for promissory
estoppel was preempted by ERISA; and (6) the trial court erred in granting appellees’
motion for summary judgment on limitations because appellees failed to establish as
a matter of law that the statute began running prior to December of 2001.
          We affirm.
Background
          C.R., an employee of Osmose, had insurance through Osmose’s employee
healthcare plan (“Osmose Plan”). In April 2001, C.R. needed home IV therapy
medical services. Before providing medical services to C.R., AITS, an out-of-network medical provider, alleged that it called NAHP, the third-party claims
administrator for Osmose, to verify that the medical services provided would be
covered. An agent for NAHP told AITS that the medical services would be
reimbursed. AITS then provided the medical services and sought reimbursement of
$31,089.20 from NAHP on April 2, 2001. On June 26, 2001, in an “Explanation of
Benefits” letter to AITS, NAHP agreed to reimburse $3,500 of AITS’s claim, but
denied the remaining $22,689.20 because it was above the usual and customary
charges for the services rendered to C.R.


 On August 28, 2001, AITS appealed
NAHP’s decision to deny the claim by letter to NAHP. By letter dated December 12,
2001, NAHP denied the appeal after determining that it had correctly paid the claim. 
          On October 14, 2005, AITS sued NAHP and Osmose to recover $27,589.20



based on the medical services it had provided to C.R. AITS brought claims for
breach of contract, negligent misrepresentation, and promissory estoppel. NAHP



sought a traditional and no-evidence summary judgment based on the statute of
limitations and on its contention that AITS’s claims were preempted by the
Employment Retirement Income Security Act of 1974 (“ERISA”).


 Osmose also filed
a traditional motion for summary judgment. 
          At the summary judgment hearing, in response to the statute of limitations
argument, AITS argued that it was “relying on an implicit oral agreement between
plaintiff and North American Administrators pursuant to [AITS’s president Connie
Hudec’s] conversation with Debbie,” an NAHP representative, made in Hudec’s
telephone call to NAHP to verify coverage, in which Debbie allegedly represented
that AITS’s charges for services rendered to C.R. would be covered. Counsel for
AITS stated that “our breach of contract claim is based on the oral agreement between
[NAHP] as agent for Osmose and Ms. Hudec” and that “[w]e are not bringing a
breach of contract case under an assignee of the plan. We have not stepped into the
shoes of the patient in this case.” After the hearing, the trial court granted summary
judgment, agreeing with the appellees that the statute of limitations had run and that
AITS’s claims were preempted by ERISA. AITS appeals from the trial court’s order.
ERISA
          In its fourth and fifth issues, AITS contends that the trial court erred in finding
that NAHP established as a matter of law that AITS’s state law claims for breach of
contract and promissory estoppel were preempted by ERISA and that it, therefore, can
go forward with its claims.
          NAHP and Osmose argued in their summary judgment motions that all of
AITS’s claims were preempted by ERISA because AITS’s claims sought benefits
under an ERISA


 employee plan, the Osmose Plan. AITS responded,
          It is irrelevant to this case whether C.R. was covered under the
Plan for the supplies and services provided by AITS, and AITS neither
seeks benefits from the Plan nor claims that the Plan acted improperly
in processing and denying AITS’s claim. AITS’s claims are thus
independent of the Plan’s actual obligations under the terms of the
insurance policy, and AITS in no way seeks to modify those obligations. 
Rather, AITS, as a third-party healthcare provider, seeks damages from
an insurance company and its alleged agents, claiming that, had it not
been for the promise to pay for supplies and services to be provided to
C.R., AITS would not have accepted the financial risk of providing said
supplies and services to C.R. 

          It is well established that the legal treatment of claims under Texas law focuses
on the true nature of disputes rather than allowing artful pleading to gain favorable
redress under the law. See Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 636 (Tex.
2007) (forbidding morphing contract claims into fraud causes of action). A plaintiff
cannot simply recast a claim in order to avoid having its cause of action statutorily
barred. Viviano v. Moore, 899 S.W.2d 326, 327 (Tex. App.—Houston [14th Dist.]
1995, pet. denied); see also In re Merrill Lynch Trust Co. FSB, 235 S.W.3d 185, 188
(Tex. 2007) (applying same rule to arbitration); Garland Cmt’y Hosp. v. Rose, 156
S.W.3d 541, 543–44 (Tex. 2004) (forbidding use of artful pleading to avoid Health
Care Liability Act’s requirements when essence of suit is health care liability claim). 
Thus, we focus on the true nature of the dispute between AITS and NAHP to
determine whether or not AITS’s claims are a disguised attempt to expand the terms
of a benefit plan covered by ERISA and are, therefore, preempted.
ERISA Preemption
          Congress enacted ERISA as a comprehensive system to regulate employee
benefit plans “to promote the interests of employees and their beneficiaries in
employee benefit plans . . . [and] to protect contractually defined benefits.” Firestone
Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113, 109 S. Ct. 948, 956 (1989). The act
regulates both pension plans and welfare plans that provide benefits for contingencies
such as illness, accident, disability, death, or unemployment. Cathey v. Metro. Life
Ins. Co., 805 S.W.2d 387, 388 (Tex. 1991). While it provides standards and rules
governing reporting, disclosure, and fiduciary responsibility for pension and welfare
plans, ERISA does not mandate any particular benefits. Shaw v. Delta Air Lines, Inc.,
463 U.S. 85, 91, 103 S. Ct. 2890, 2896–97 (1983).
          ERISA includes expansive preemption provisions, which are intended to ensure
that employee benefit plan regulation be “exclusively a federal concern.” Alessi v.
Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S. Ct. 1895, 1906 (1981). To this
end, Congress has statutorily provided that ERISA “shall supersede any and all state
laws insofar as they may now or hereafter relate to any employee benefit plan.” 
Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a) (2006). 
ERISA preemption applies not only to state laws but to all forms of state action
dealing with the subject matters covered by the statute. 29 U.S.C. § 1144(c)(1); see
also Shaw, 463 U.S. at 98, 103 S. Ct. at 2900. Accordingly, when a state court suit,
alleged in terms of a state common-law or statutory cause of action, relates to an
employee welfare benefit plan, ERISA may preempt the state law in favor of federal
law. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63–67, 107 S. Ct. 1542, 1546–48
(1987); Gorman v. Life Ins. Co. of N. Am., 811 S.W.2d 542, 545 (Tex. 1991).
          The ERISA preemption provision is to be broadly construed. See Aetna Health
Inc. v. Davila, 542 U.S. 200, 216–17, 124 S. Ct. 2488, 2500 (2004) (stating that
Court’s understanding of ERISA’s preemptive effect is informed by “overpowering
federal policy” embodied in ERISA’s civil enforcement provision, which was
intended to create “an exclusive federal remedy”). However, the Supreme Court has
cautioned that “[s]ome state actions may affect employee benefit plans in too tenuous,
remote, or peripheral a manner to warrant a finding that the law ‘relates to’ the plan.” 
Shaw, 463 U.S. at 100 n.21, 103 S. Ct. at 2901 n.21. To determine whether a state
law claim has the forbidden connection to ERISA, we look to both the objectives of
ERISA and the effect of the asserted state law on ERISA plans. Egelhoff v. Egelhoff,
532 U.S. 141, 147, 121 S. Ct. 1322, 1327 (2001). Because the scheme is deemed to
be comprehensive with regard to the remedies provided and excluded, any state law
cause of action that duplicates, supplements, or supplants the ERISA civil
enforcement remedy conflicts with the Congressional intent to make the ERISA
remedy exclusive and is preempted. See Davila, 542 U.S. at 209, 124 S. Ct. at 2495. 
          The Fifth Circuit Court of Appeals has propounded a two-pronged test whereby
ERISA preempts a state law claim if “(1) the state law claim addresses an area of
exclusive federal concern, such as the right to receive benefits under the terms of an
ERISA plan; and (2) the claim directly affects the relationship between the traditional
ERISA entities-the employer [in its role as administrator], the plan and its fiduciaries,
and the participants and beneficiaries.” Hubbard v. Blue Cross & Blue Shield Ass’n,
42 F.3d 942, 945 (5th Cir. 1995); see also Mayeaux v. La. Health Serv. & Indem. Co.,
376 F.3d 420, 432 (5th Cir. 2004).
          ERISA also contains express jurisdictional provisions. Section 502(a)(1)(B)
and (e) of ERISA, codified at Title 29 section 1132(a)(1)(B) of the United States
Code, provides for a civil action by a beneficiary (1) “to recover benefits due to him
under the terms of a plan”; (2) to enforce his rights under the plan; or (3) to clarify his
rights to future benefits under the plan. 29 U.S.C. § 1132(a). Subsection (e) of
section 1132 provides that the federal courts have exclusive jurisdiction over ERISA
claims, except that state courts of competent jurisdiction and district courts of the
United States have concurrent jurisdiction of actions by a beneficiary or plan
participant within the scope of section 1132(a)(1)(B), stating, “Except for actions
under subsection (a)(1)(B) of this section, the district courts of the United States shall
have exclusive jurisdiction of civil actions under this title brought by the Secretary
or by a participant.” 29 U.S.C. § 1132(e)(1). Thus, for actions by an ERISA plan
participant “to recover benefits due [to him] under the terms of his plan,” the state and
federal courts have concurrent jurisdiction. See Gorman, 811 S.W.2d at 546; Haynes
v. Haynes, 178 S.W.3d 350, 353 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).
          Even though state courts have jurisdiction over claims under ERISA section
1132(a)(1)(B) to recover benefits due under the terms of an ERISA plan, state law
claims seeking relief within the scope of section 1132(a)(1)(B) are completely
preempted by ERISA. See Mayeaux, 375 F.3d at 432; Hubbard, 42 F.3d at 945. 
Moreover, in such instances of complete preemption, a state law claim may be re-characterized as an action to recover benefits under ERISA, and the state courts will
have jurisdiction over that claim, although the claim may be subject to removal to
federal court as a claim “arising under” federal law. Arana v. Ochsner Health Plan,
338 F.3d 433, 439–40 (5th Cir. 2003); see 28 U.S.C. §§ 1331 and 1441(a) (providing
for removal). If, however, a claim relates to an employee benefit plan governed by
ERISA but is not a claim for benefits due under the policy or a suit to enforce or
clarify rights under the policy, and therefore within the scope of section
1132(a)(1)(B), it will fall within the exclusive jurisdiction of the federal courts under
ERISA. See 29 U.S.C. § 1132(e)(1). Accordingly, if a state law claim relates to an
ERISA plan but does not fall within the scope of section 1132(a)(1)(B) and (e)(1), an
assertion of ERISA preemption is, if successful, jurisdictional. Saks v. Franklin
Covey Co., 316 F.3d 337, 349–50 (2d Cir. 2003). 
          By contrast, if a claim falls within the scope of section 1132(a)(1)(B) and
(e)(1), it will be preempted, but the preemption will ordinarily not be jurisdictional,
because the state and federal courts have concurrent jurisdiction over such actions. 
See Mills v. Warner Lambert Co., 157 S.W.3d 424, 425 (Tex. 2005) (ordinarily
preemption operates as affirmative defense to plaintiffs’ state-law claims but does not
deprive state courts of jurisdiction over those claims; state-court jurisdiction is
affected only when Congress requires that claims be addressed exclusively in federal
forum). Nevertheless, if a plaintiff’s state law claims are preempted by ERISA
section 1132(a)(1)(B), and no claim is asserted under ERISA, summary judgment
dismissing those claims is appropriate. See Mayeaux, 376 F.3d 420, 430, 433; 
Cadillac Ins. Co. v. L.P.C. Distrib. Co., 770 S.W.2d 892, 894–95 (Tex. App.—San
Antonio 1989, writ denied) (when employer and employees did not attempt to assert
cause of action under ERISA for insurer’s allegedly wrongful cancellation of
insurance contract and failed to make sufficient allegations to confer jurisdiction over
state law claims under ERISA’s “savings clause” for state law insurance, banking,
and insurance claims, 29 U.S.C. §1144(b)(2)(A), subject matter jurisdiction was not
conferred on state court).
          Finally, despite ERISA preemption’s expansive scope, if a state law claim does
not seek to recover or replace benefits under an employee welfare benefit plan and
is based on a violation of a legal duty independent of ERISA, it is not preempted by
ERISA and may go forward as a state law claim. Haynes, 178 S.W.3d at 354; see
also Davila, 542 U.S. at 210, 124 S. Ct. at 2496. Necessarily, state law claims based
on the violation of a legal duty independent of ERISA do not “relate to” ERISA so
as to implicate preemption or federal jurisdiction. In such a case, absent diversity,
and with no other basis for “arising under” jurisdiction, it is the federal court that is
deprived of subject matter jurisdiction to hear the cause. See, e.g., Peacock v.
Thomas, 516 U.S. 349, 352–54, 116 S. Ct. 862, 865–66 (1996) (holding veil-piercing
claim does not state cause of action under ERISA and cannot independently support
federal subject matter jurisdiction); Hook v. Morrison Milling Co., 38 F.3d 776,
785–86 (5th Cir. 1994) (affirming remand of common law negligence suit after
finding claim did not relate to and therefore was not preempted by ERISA). 
Accordingly, since AITS contends its claims are based on an independent state law
duty of NAHP and are not preempted, while NAHP contends AITS’s claims are
disguised claims to recover benefits due a participant under an ERISA plan and are,
therefore, within the scope of ERISA section 1132(a)(1)(B) and are preempted, we
must determine what, if any, preemptive effect ERISA has in the instant case and the
resulting effect on subject matter jurisdiction.
The Parties’ Contentions
          On appeal, AITS argues that it is not seeking benefits under the Osmose Plan,
but rather it is seeking damages in regard to an independent promise made by an
agent of NAHP to pay for medical services given to C.R., and therefore its state law
claims are not preempted by ERISA. AITS argues that “had it not been for the
promise to pay for supplies and services to be provided to C.R., AITS would not have
accepted the financial risk of providing said supplies and services to C.R.” AITS
places great emphasis on the fact that it is not seeking to recover benefits as an
assignee of the patient.


 NAHP responds that “Appellant’s action to recover benefits
from a covered plan falls directly within the civil enforcement provision of ERISA,
which provides an exclusive federal cause of action for the resolution of such
disputes.” NAHP thus relies on the preemptive effect of section 502(a)(1)(B) of
ERISA, 29 U.S.C. § 1132(a)(1)(B). 
          The arguments that AITS advances against ERISA’s preemption of its claims
are not novel. AITS itself has advanced identical arguments on essentially identical
facts in a federal forum to an adverse conclusion. See Ambulatory Infusion Therapy
Specialists, Inc. v. Aetna Life Ins. Co., H-05-4389, 2007 WL 320974 (S.D. Tex. Jan.
30, 2007).


 The federal district court set out the facts and procedural history of
AITS’s prior case as follows: 
Ambulatory Infusion Therapy Specialists, Inc. (“AITS”), an at-home infusion treatment provider, sued Aetna Life Insurance Company
and Prudential Insurance Company of America in Texas state court,
alleging a right to recover the amounts billed for medical services
provided to a patient. The patient, N.D., worked for The Kroger
Company, which funded an employee health insurance plan (the “Plan”).
Prudential provided third-party claims administrative services to the
Plan until 1999, when Aetna began providing those services.
 
Beginning in late 2000, AITS provided medical services to N.D.
and submitted claims to Aetna for payment for those services under the
Plan. Aetna paid most of the amounts invoiced but denied payment on
approximately 15% to 20% of the submitted charges on the grounds that
they were duplicative or exceeded the reasonable and customary fees for
the services.

AITS sued Aetna and Prudential in Texas state court, asserting
state-law claims for breach of contract, negligent misrepresentation, and
promissory estoppel. (Docket Entry No. 9, Ex. 1, ¶¶ V-VII). The
defendants removed on the grounds that ERISA completely preempted
AITS’s claims and that this court had diversity jurisdiction. This court
denied AITS’s motion to remand by Memorandum and Order issued in
June 2006, finding that the breach of contract claim was completely
preempted. This court ordered AITS to replead if it intended to assert
an ERISA claim. AITS did replead but asserted no ERISA claim.
Instead, AITS reasserted the same state-law breach of contract, negligent
misrepresentation, and promissory estoppel causes of action. (Docket
Entry No. 15). Aetna and Prudential filed a motion to dismiss on the
basis that ERISA preemption barred all AITS’s state-law claims.
(Docket Entry No. 18). AITS responded, arguing that none of its claims
were preempted. (Docket Entry No. 19). AITS also moved for leave to
file a second amended complaint to add a state-law fraudulent
misrepresentation claim. (Docket Entry No. 20).
 
In its Memorandum and Order of August 29, 2006, this court
denied AITS’s motion for leave to amend to add the fraud claim,
dismissed the breach of contract claim on the basis of complete ERISA
preemption, converted the defendants’ motion to dismiss the remaining
negligent misrepresentation and promissory estoppel claims into one for
summary judgment, and set a schedule for discovery tailored to
resolving the summary judgment motion. The parties have completed
that discovery.
 
Aetna and Prudential have moved for summary judgment on
AITS’s negligent misrepresentation and promissory estoppel claims.
Id. at *1; see also AITS v. Aetna Life Ins. Co., No. H-05-4389, 2006 WL 2521411
(S.D. Tex. June 13, 2006); AITS v. Aetna Life Ins. Co., No. H-05-4389, 2006 WL
1663752 (S.D. Tex. June 13, 2006).
          In the prior federal case, as here, AITS’s president, Hudec, testified that she
called the patient’s insurance company, Prudential Plus, to verify coverage before
administering services to the patient, N.D., and spoke to “Nancy.” 2007 WL 320974,
at *3. This telephone call was the only conversation between AITS and either
Prudential or Aetna regarding the patient’s plan coverage. Id. at *4. “Based on her
telephone call with Nancy on October 9, 2000, Hudec believed that AITS would be
paid for the services it provided to N.D. under the Plan. Hudec testified that Nancy
said that N.D. had out-of-network coverage under the Plan, which Hudec took to
mean that ‘my claims would be paid.’” Id. (citations to record omitted). AITS
claimed that it was not asserting its claims as the patient’s assignee. Id. at *8. Rather,
it argued, as here, that it was “seeking to recover damages for services that it would
not have provided ‘had it not been for the communications made by Defendants’
agents to pay for supplies and services to be provided to N.D’” during the telephone
call by Hudec to verify coverage. Id. 
          The only perceivable differences between the facts in this case and the facts in
the federal case are that, in the prior case, the ERISA plan and the defendants are
different and, in the prior case, AITS did receive an assignment of the plan benefits
provided to the patient, see 2006 WL 1663752, although it insisted it was not
asserting its state law claims as the patient’s assignee, see 2007 WL 320974, whereas,
here, AITS did not get an assignment of benefits from the participant or the
beneficiary, C.R.


 However, we do not find that these distinctions save AITS from
the same fate it suffered in federal court. AITS admits that if it did have an
assignment of benefits from C.R., its claims would be preempted. To allow AITS to
maintain its state law claims only on the basis that it did not have an assignment of
benefits “would allow parties who lacked standing to sue under ERISA to circumvent
its provisions by filing suit in state courts under state law, thereby obtaining
advantages denied to parties enumerated under ERISA Section 502(a).” Hermann
Hosp. v. MEBA Med. & Benefits Plan, 959 F.2d 569, 576, 578 (5th Cir. 1992)
(holding that “ERISA preempted Hermann’s state law claims irrespective of whether
Hermann brought those claims as an enumerated party under ERISA Section 502(a)
or in another capacity”). We thus disagree with AITS’s argument that it is not
seeking benefits because it did not get an assignment of benefits from C.R. Its failure
to obtain an assignment of the benefits on which its claim against C.R.’s employer,
Osmose, and the Osmose Plan’s insurer is premised does not preclude ERISA
preemption.
          AITS does not contend that the Osmose Plan is not an ERISA plan, nor does
it contend that C.R. had no coverage under that Plan. Instead, it contends that it had
a separate and independent contract with NAHP whereby NAHP agreed to pay 100%
of any services AITS provided to C.R., a covered employee under the Osmose Plan. 
The federal courts, including the federal district court in AITS’s prior suit against
Aetna and Prudential, have drawn a distinction between cases in which the existence
of coverage is in dispute, which are not preempted, and those in which the dispute is
merely over the extent of coverage, which are preempted. See Hermann Hosp. v. The
Cent. States, Se. & Sw. Areas Health and Welfare Fund, 962 F. Supp. 993, 997 (S.D.
Tex. 1997); AITS, 2007 WL 320974, at *7–8. 
          In a situation in which the patient has no coverage at all, a third-party service
provider’s misrepresentation claim against an ERISA plan cannot “relate to” the plan
because the patient, and therefore the service provider, has no connection to the plan
beyond the alleged misrepresentation. See Cent. States, 962 F. Supp. at 997; AITS,
2007 WL 320974, at *7. Thus, “the proper inquiry is whether the beneficiary under
the ERISA plan was covered at all by the terms of the health care policy, because if
the beneficiary was not, the provider of health services acts as an independent, third
party subject to the holding in Memorial [Hosp. Sys. v. Northbrook Life Ins. Co.]”
that such a third party’s independent claims are not preempted. AITS, 2007 WL
320974, at *8; see Memorial, 904 F.2d 236, 243–46 (5th Cir. 1990); see also
Transitional Hosp. Corp. v. Blue Cross & Blue Shield of Tex., Inc., 164 F.3d 952, 954
(5th Cir. 1999) (“ERISA does not preempt state law when the state-law claim is
brought by an independent, third-party health care provider (such as a hospital)
against an insurer for its negligent misrepresentation regarding the existence of health
care coverage.”). When the patient has at least some coverage, however, the
connection with the ERISA plan is present, and to allow the hospital to pursue its
state law claims would permit the hospital to expand the limited rights granted to the
plan beneficiary and thereby defeat the purposes of ERISA altogether. Cent. States,
962 F. Supp. at 997.
          AITS’s claim, although couched in terms of an attempt to recover on an
independent promise to pay for medical benefits based on breach of contract and
promissory estoppel, is really an attempt to expand the rights of the patient, C.R.,
under the Osmose Plan to 100% of services rendered by a third-party service
provider, in defiance of the terms of coverage and of established law. In the words
of the federal court in AITS’s suit against Aetna and Prudential, the claim “simply
challenges the decision that certain amounts billed were not covered by the Plan
terms.” AITS, 2007 WL 320974, at *10. The dispute is, thus, not about the existence
of coverage, but about the extent of coverage. See Cent. States, 962 F. Supp. at 997. 
Therefore, although AITS did not get an assignment of benefits from C.R., its “claim
is derivative of [C.R.’s] rights under the Plan and dependent on the Plan terms.” 
AITS, 2007 WL 320974, at *10. As such, to resolve AITS’s claim for breach of
contract and promissory estoppel would require an inquiry into the Osmose Plan
administration, an area of exclusive federal concern. See id. 
          We agree with the federal district court in AITS’s prior suit against Aetna that
AITS’s state law claims fall within the purview of Mayeaux and are preempted. See
Mayeaux, 376 F.3d at 432–33; AITS, 2007 WL 320974, at *10. Both the AITS court
and the Mayeaux court held that the plaintiff’s state law claims were “in substance a
collateral challenge to the ERISA insurer/administrator’s coverage determination”
and thus ERISA conflict preemption applied. AITS, 2007 WL 320974, at *10; see
Mayeaux, 376 F.3d at 432–33. 
          Specifically, in Mayeaux, the Fifth Circuit agreed with the district court that
the third-party provider’s state law claims against the insurer for negligence, unfair
trade practices, defamation, and intentional interference with contracts related to an
ERISA plan because they challenged the insurer’s “handling, review, and disposition
of a request for coverage” and thus collaterally attacked the insurer’s determination
of the actual obligation under the terms of the insurance policy. 376 F.3d at 432–33. 
It concluded that if a third party “could collaterally challenge a plan’s decision not to
provide benefits, he would directly affect the relationship between the plan and its
beneficiary, two traditional ERISA entities. That clearly cannot be allowed,” and thus
the state law claims could not survive ERISA conflict preemption. Id. at 433. The
court had “no difficulty holding that ‘the existence of an [ERISA] plan [was] a critical
factor in establishing liability’ for the state law causes of action asserted by [the
plaintiff].” Id.; see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139–40,
111 S. Ct. 478, 483 (1990). Like the federal district court in AITS’s prior case, the
federal court of appeals in Mayeaux affirmed the district court’s grant of summary
judgment to the defendant on the plaintiff’s ERISA and state law claims. Mayeaux,
376 F.3d at 433. We agree with both courts and do likewise.
          We overrule AITS’s fourth and fifth issues. We hold that AITS’s state law
claims are preempted by ERISA and that the trial court properly granted summary
judgment on those claims. Even if we had not concluded, however, that the trial court
properly held that appellant’s common law claims were pre-empted by ERISA, we
would still have affirmed the summary judgment on limitations.
Limitations
          In its sixth issue on appeal, AITS argues that the trial court erred in granting
summary judgment on its common law contract and promissory estoppel claims based
on statute of limitations. We disagree.
          A defendant moving for summary judgment on the affirmative defense of
limitations must conclusively prove when the cause of action accrued. KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).
The statute of limitations for a breach-of-contract cause of action is four years. Tex.
Civ. Prac. & Rem. Code Ann. § 16.004(a)(3) (Vernon 2002). Likewise, the statute
of limitations for promissory estoppel is four years. Id. § 16.051 (Vernon 1997);
Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663, 680 (Tex. App.—Houston [1st
Dist.] 1996, no writ). A breach of contract claim accrues when the contract is
breached. Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002). The contract is not
breached until a wrongful act occurs. See Anderson v. Cocheu, 176 S.W.3d 685, 690
(Tex. App.—Dallas 2005, pet. denied). “A cause of action generally accrues, and the
statute of limitations begins to run, when facts come into existence that authorize a
claimant to seek a judicial remedy.” Johnson & Higgins of Tex., Inc. v. Kenneco
Energy, Inc., 962 S.W.2d 507, 514 (Tex. 1998). In most cases, a cause of action
accrues when a wrongful act causes a legal injury, regardless of when the plaintiff
learns of that injury or if all resulting damages have yet to occur. S.V. v. R.V., 933
S.W.2d 1, 4 (Tex. 1996). 
          Here, the June 26, 2001 explanation of benefits letter showed that NAHP was
paying only $3,500 of AITS’s $31,089.20 invoice, thus denying reimbursement for
$27,589.20. Upon receipt of the June 26, 2001 letter, AITS had knowledge of an
injury—the denial of benefits in the amount of $27,589.20—and, therefore, had
sufficient facts to seek a judicial remedy.


 See Pace v. Travelers Lloyds of Tex. Ins.
Co., 162 S.W.3d 632, 634–35 (Tex. App.—Houston [14th Dist.] 2005, mand. motion
denied); Thompson v. Great Am. Life Ins. Co., 2005 WL 1072706, at *3 (W.D. Tex.
May 5, 2005) (holding that “the fact that Defendant would ‘reconsider’ its decision
indicates to a reasonable recipient that a decision to deny coverage had already been
made and communicated to Plaintiff. Thus . . . Plaintiff possessed sufficient
information to allow him to go to court to seek a judicial remedy, and his cause of
action accrued on that date.”). Although AITS did not know the full extent of its
injury, it nonetheless knew that an injury—denial of benefits—had occurred. See
S.V., 933 S.W.2d at 4 (stating “a cause of action accrues when a wrongful act causes
some legal injury, even if the fact of injury is not discovered until later, and even if
all resulting damages have not yet occurred”). We thus conclude that the statute of
limitations commenced on June 26, 2001, the date in which AITS learned that NAHP
denied payment. AITS did not timely file suit within the statute of limitations, and,
therefore, its state law claims, if not preempted, would be time-barred.

          Conclusion
          We affirm the judgment of the trial court.


 
 


                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Alcala.